FILED

2020 Sep-11  PM 03:42
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | |
|---|---|
| **MARY KATHERINE ANDREWS INDIVIDUALLY AND ON BEHALF OF A CLASS OF SIMILARLY SITUATED PERSONS,** ) ) ) ) ) | |
| **Plaintiff,** ) ) | **CIVIL ACTION CASE NUMBER:** (**CLASS ACTION**) |
| **v.** ) ) | |
| **STAR SNACKS COMPANY, LLC** ) ) | |
| **Defendant.** ) | |

**INDIVIDUAL AND CLASS ACTION**
**COMPLAINT AND DEMAND FOR**
**JURY TRIAL**

Plaintiff, Mary Katherine Andrews ("Plaintiff"), files this Individual and Class Action Complaint against Defendant, Star Snacks Company, LLC ("Star Snacks") and alleges as follows:

## I.   INTRODUCTION

1.  Plaintiff brings this action individually and on behalf of a class of similarly situated persons for compensatory and statutory damages as a result of Star Snacks marketing its Imperial Nuts, Energy Blend (sometimes referred to as "Energy Blend" or "the product") in violation of federal and state law regarding the packaging and marketing of said product.  Plaintiff thus files this Complaint for violation of law respecting warranty requirements and for breach of implied agreement.

1

## II. **THE PARTIES**

2.  Plaintiff, Mary Katherine Andrews, is a resident of St. Clair County, Alabama. Plaintiff purchased the subject Energy Blend product at her neighborhood Dollar Tree store number 3484 located at 2220 Village Drive, Moody, Alabama in St. Clair County, Alabama.  A copy of the Plaintiff's receipt is as follows:



3.  The Defendant Star Snacks is a limited liability company with corporate offices in Jersey City, New Jersey.  Star Snacks markets its products throughout the United States.  Star Snacks markets its Energy Blend in Dollar Tree retail outlets throughout Alabama and the rest of the country.

## III. <u>JURISDICTION AND VENUE</u>

4.   This court has original jurisdiction over this civil action under the Class Action Fairness Act of 2005.  The amount in controversy exceeds the sum or value of Five Million Dollars ($5,000,000), exclusive of interest and costs and there is diversity of citizenship because named Plaintiff and certain members of the class are citizens of a different state than Defendant, as required by 28 U.S.C. § 1332(d)(2).

5.  Venue is proper in this judicial district because Defendant conducts substantial business in this district and the events giving rise to Plaintiff's claim occurred in this district; the unlawful conduct complained of herein occurred in this district.

## IV. <u>STATEMENT OF FACTS</u>

6.  In June 2020, Plaintiff visited the Dollar Tree store located in Moody, Alabama. On said occasion, the Plaintiff purchased three (3) packages of the product, which is marketed by the Defendant, Star Snacks Company, LLC.  The following is a conformed copy of the front of said Energy Blend.[1]

---

[1] Upon information and belief, Plaintiff alleges that the Defendant has made minor subsequent revisions to the subject Energy Blend package.  However, Plaintiff asserts that the modified package is still a misbranded product the same as the Plaintiff's Energy Blend purchase.



The following is a likeness of the back side of said Energy Blend.



7.  Expecting that the Energy Blend was primarily almonds, pecans and walnuts due to the large font listing of such and the picture on the front of the package, the Plaintiff was surprised and disappointed when she opened said product and learned of its true contents; such was mostly peanuts and peanut pieces.  The following is a conformed

5

likeness of said contents:



8.   Plaintiff then opened the other two (2) packages of the Energy Blend.   All packages were the same – an abundance of peanuts and peanut pieces with a minimal amount each of almonds, pecans and walnuts.   The walnuts and pecans were in pieces and the almonds were whole.

9.   The said Energy Blend is deceptively marketed ostensibly as containing mostly almonds, pecans and walnuts when in actuality is composed of more peanuts than all the other contents combined.

10.   The said product is in violation of a number of federal food regulations:

a.   the product is deceptively marketed;

b.   the front of the package falsely displays a photo of almonds, pecans and walnuts as being ¾ of the nut contents when such is roughly a mere 1/5 (combined) of the nut contents;

c.   the product is misbranded under federal law and regulations[2];

d.   the front of the product lists "Almonds, Pecans and Walnuts" as if such was the primary contents, which causes a reasonable consumer to expect such to be the case;

e.   even the peanut contents are misbranded since peanut pieces are to be branded as such.

11. The "front" of a food package, according to federal regulations, is referred to as the principal display panel (PDP). *See 21 CFR 101.1.*  According to the federal Food and Drug Administration (FDA), it is that portion of the package label that is most likely to be seen and depended upon by the consumer at the time of purchase.  The PDP is to be a correct statement of the products' contents.  *See 21 CFR 101.3(a) and 101.105(a).* The picture on the PDP and the contents statement on the PDP deceptively portrays that the product is mostly "Almonds, Pecans and Walnuts", when such is untrue.

12. The ingredient list (contents) on a food label is required to be a listing of each ingredient in an accurate, not misleading manner.  *See 21 CFR 102.5 (a) and (b), 21 CFR 101.4(a).*  Star Snacks has listed and pictured the contents of the product

---

[2] A <u>food</u> shall be deemed to be misbranded – (a) If (1) its labeling is false or misleading <u>in any particular</u>, … 21 U.S. Code § 343, Misbranded Food.

erroneously in a deceptive manner with "Almonds, Pecans and Walnuts" being listed in predominant descending order.

13. Additionally, under federal food regulations, the contents in their entirety are to also be listed on the "information panel" which is immediately to the right of the PDP. *See 21 CFR 101.1 through 101.9 and 21 CFR 101.105.*  In this case, Star Snacks, correctly lists in much smaller font the true measure of the product's contents on the reverse of the package.  While some consumers might turn the package over and read the "small print", the reasonable consumer would be more apt to buy the product based on the PDP content listing.  Furthermore, all federal regulations refer to listing of a food packages ingredient with the most predominant content first and the balance in descending order of prominence.  No federal regulation allows a package's PDP to deceptively list a product's contents on the front (PDP) and then merely attempt to correct same in small font on the reverse.

14. In fact, the opposite is true.  The Code of Federal Regulations respecting food labeling sets forth the extraordinary lengths that federal law expects no ounce of deception in food labeling.

> (a)  The common or usual name of a food (appearing on the container's front), which may be a coined term, shall accurately identify or describe, in as simple and direct terms as possible, the basic nature of the food or its characterizing properties or ingredients.  The name shall be uniform among all identical or similar products and may not be confusingly similar to the name of any other food that is not reasonably encompassed within the same name.  Each class or subclass of food shall be given its own common or usual name that states, in clear terms, what it is in a way that distinguishes it from different foods.

(b)  The common or usual name of a food shall include the percentage(s) of any characterizing ingredient(s) or component(s) when the proportion of such ingredient(s) or component(s) in the food has a material bearing on price or consumer acceptance or when the labeling or the appearance of the food may otherwise create an erroneous impression that such ingredient(s) or component(s) is present in an amount greater than is actually the case.  21 CFR 102.5 (a) and (b)

15.  Furthermore, an extensive federal government funded study on the influence that the "front-of-pack" has on causing consumers to select a food item was conducted under auspices of the National Center for Biotechnology Information in April 2020.  The study determined, after surveying four electronic data bases that what was on the "front-of-pack" had a greater influence on consumers than other labeling.   The study's Abstract states:

Packaging is increasingly recognized as an essential component of any marketing strategy.   Visual and informational front-of-pack cues constitute salient elements of the environment that may influence what and how much someone eats.  Considering their overwhelming presence on packaging of non-core foods, front-of-pack cues may contribute to the growing rates of overweight and obesity in children and adults.  We conducted a systematic review to summarize the evidence concerning the impact of front-of-pack cues on choices and eating behaviors.  Four electronic databases were searched for experimental studies (2009-present).  This resulted in the inclusion of 57 studies (in 43 articles).  We identified studies on children (3-12 years) and adults (≥ 18 years), but no studies on adolescents (12-18 years).  The results suggest that children and adults are susceptible to packaging cues, <u>with most evidence supporting the impact of visual cues</u>.  (emphasis added) More specifically, children more often choose products with a licensed endorser and eat more from packages portraying the product with an exaggerated portion size.  Adults' eating

9

> behaviors are influenced by a range of other visual cues, mainly, package size and shape, and less so by informational cues such as labels.[3]

To recap, the above scientific study confirmed that adults purchase food items more by the visual cues (pictures) than by label print.

16. Regarding nut pieces, as referenced above, when a food is marketed in one of several optional forms (whole, sliced, diced, etc.) the particular form of the package contents regarding that particular food shall be considered to be a necessary part of the statement of identity which is to be listed on the PDP. *See 21 CFR §101.3 (c).* However, rather than Star Snacks correctly listing the nut contents as whole and pieces, Star Snacks only pictures whole nuts. The same with its contents' listing. Thus, not only is the listing of ingredients misleading, but Star Snacks also pictures the product deceptively as whole nuts.

17. Regarding the photo of Energy Blend on the PDP, under federal food regulations, a photo or other likeness of a products' contents, when displayed on the PDP shall not be misleading as to the packages' contents and shall be so arranged in the photo or likeness in descending order of the package's contents with the predominant one first and so forth, with the least item last – by weight. *See 21 CFR 101.3 and 101.4.* Here, with Energy Blend, Star Snacks reinforces its deception. Defendant has the more desirable nuts (almonds, pecans and walnuts) arranged more prominently on the package to create a misleading impression of the package contents. The deceptive

---

[3] <u>That's My Cue to Eat: A Systematic Review of the Persuasiveness of Front-of-Pack Cues on Food Packages for Children vs. Adults</u>, Hallez, Qutteina, Raedschelders, Boen and Smits, 2020. https://pubmed.ncbi.nim.nih.gov/32290522/

image on the PDP causes the reasonable consumer again to deem falsely that the package contains primarily whole almonds, pecans and walnuts.

18. Although not exactly on point, but indicative of FDA's requirement for lack of deception in the marketing of mixed nut products is the FDA's special section dealing with mixed nuts products:  Sec. 164,10 Mixed nuts:  "(a) Mixed nuts is the food consisting of a mixture of four or more of the optional shelled tree nut ingredients, with or without one or more of the optional shelled peanut ingredients, of the kinds prescribed by paragraph (b) of this section; . . . Each such kind of nut ingredient when used shall be present in a quantity not less than 2 percent and not more than 80 percent by weight of the finished food. . . . (d) The name of the food is 'mixed nuts'.  If the percentage of a single tree nut ingredient or the total peanut content by weight of the finished food exceeds 50 percent but not 60 percent, the statement 'contains up to 60% ___' or '60% ___' shall immediately follow the name 'mixed nuts' . . . If the label bears any pictorial representation of the mixture of nuts, it shall depict the relative proportions of the nut ingredients of the food."

19. Marketing a package of mixed nuts, regardless of the name given to it, as Star Snacks is now doing, is a serious violation under FDA regulations.  Following is an excerpt of a field notice to FDA personnel of a product that violated Sec. 164:

**CPG Sec. 570.700 Mixed Nuts – Misbranding Involving Food Standards**

REGULATORY ACTION GUIDANCE:

The following represents the criteria for recommending legal action to CFSAN/Office of *Compliance*/Division of Enforcement (HFS-605).

The average of the subsamples (see note) examined deviates from the standards with respect to one or more of the individual factors listed below; and the number of subs out of compliance, for each such deviation, equals or exceeds the number required for action (Table 1 on page 2).

1. The weight of any one nut ingredient is less than 2% of the total net weight found – 164.110(a).

2. The weight of a nut ingredient is more than 80% of the total net weight found – 164.110(a).

3. The weight of a nut ingredient exceeds 50% of the total net weight found and the label does not state this fact – 164.110(d).

4. The percent weight of a nut ingredient (computed on the basis of the total net weight found) exceeds the labeled declaration (e.g. 60% peanuts) – 164.110(d).

5. Fill of container is less than 85% of container volume – 164.120(c).

Injunction was issued per Sec. 302 (21 U.S.C 332)

20. Under federal regulations, a food shall be deemed to be misbranded if (a) its labeling is false or misleading <u>in any particular</u> (emphasis added), or (b) if its container is so made, formed, or filled as to be misleading.  SEC. 403, *Food, Drug and Cosmetics Act* (FDC) [21 U.S.C. 343].

12

21. Clearly, Star Snacks is guilty of misbranding its Energy Blend in multiple ways. Star Snacks deceptively labels the product and formed the container as mostly almonds, pecans and walnuts when it is actually heavy on peanut pieces and peanuts.

22. Under federal food law, the following acts and the causing thereof are prohibited:

(a)    The introduction or delivery for introduction into interstate commerce of any food, drug, device, or cosmetic that is adulterated or misbranded.

(b)    The adulteration or misbranding of any food, drug, device, or cosmetic in interstate commerce.

(c)    The receipt in interstate commerce of any food, drug, device, or cosmetic that is adulterated or misbranded and the delivery or proffered delivery thereof for pay or otherwise.  *See* Sec. 301**,** FDC [21 U.S.C. 331]

Star Snacks' marketing its Energy Blend in interstate commerce is an obvious violation of federal regulations and prime for federal court litigation.

23. Plaintiff and class members purchased the Energy Blend relying on the content of the labeling and packaging described above, and reasonably believing that the Product was/is as its label represents – principally almonds, pecans and walnuts.

24. Defendant knows, knew or should have known that Plaintiff and other consumers in purchasing the Product would rely principally on the PDP labeling and packaging of the Product and would reasonably believe that the Product was/is principally almonds, pecans and walnuts.

25. In reasonable reliance on the labeling and packaging as described in detail above, and believing that the Product was as represented, Plaintiff and class members

have purchased the Product.  Star Snacks continues marketing its misbranded Energy Blend as above recited.

26.  Plaintiff and class members were misled and were led to believe at purchase that the Product was mostly almonds, pecans and walnuts because of how the Product was/is deceptively labeled and packaged prior to purchase.  Such was/is intended by Star Snacks to create the impression that the Product contains principally almonds, pecans and walnuts.

27. Because the Product is not as reasonably expected by Plaintiff and other consumers, Defendant's misbranding of the Product was and continues to be misleading and deceptive.

28. Federal law leaves little room to argue against the importance that the FDA places on proper food labeling.  In fact and in law, by Star Snacks marketing its Energy Blend as above stated, FDA states that Star Snacks is <u>misleading</u> consumers by marketing misbranded food.

**MISBRANDED FOOD**

**SEC. 403.** [343] a food shall be deemed to be misbranded –

Section 403(a)(1) of the Federal Food, Drug, Cosmetic Act (FD&C Act) deems a food is misbranded, if the labeling is false or misleading "in any particular."  What does "in any particular" mean?

"Misleading" covers not just false claims but also when ambiguity or inference [a label] create(s) a misleading impression."  In addition, a label may be deemed misleading for what it fails to disclose.  That is, a label can be literally true but still be misleading when it does not disclose an important fact that is "material" to consumers.

14

**FD&C Act § 201(n)**

(n)   If an article is alleged to be misbranded because the labeling or advertising is misleading, then in determining whether the labeling or advertising is misleading there shall be taken into account (among other things) not only representations made or suggested by statement, word, design, device, or any combination thereof, but also the extent to which the labeling or advertising fails to reveal facts material in the light of such representations or material with respect to consequences which may result from the use of the article to which the labeling or advertising relates under the conditions of use prescribed in the labeling or advertising thereof or under such conditions of use as are customary or usual.[4]

29.  Each consumer of Energy Blend has been exposed to the same or substantially similar deceptive practice as each package of Defendant's Energy Blend has the same misleading statements and images concerning its contents.  All of Defendant's Energy Blend deceptively conveys the same message -- that it is principally almonds, pecans and walnuts. That means that under federal law, Energy Blend packaging is misleading.

30.  Plaintiff and other consumers have paid the sales price for the Product, thinking it was as represented but would have paid significantly less for the Product had they known that the Product was not as represented.   In the alternative, Plaintiff and other consumers would not have purchased the Product at all had they known that the Product was mostly peanuts and peanut pieces.   Therefore, Plaintiff and other consumers in purchasing the Product suffered injury in fact and lost money as a result of Defendant's false, unfair, and misleading practices, as described herein.

31.  As a result of its misleading business practice, and the harm caused to Plaintiff

---

[4] Food Regulation, Law, Science, Policy and Practice, 2d Ed., Fortin, pp. 46 and 47.

and other consumers, Defendant should be enjoined from falsely representing that the Product is primarily almonds, pecans and walnuts.  Furthermore, Defendant should be required to pay for all damages caused for deceiving consumers, including Plaintiff.

## V. <u>CLASS ALLEGATIONS</u>

32. Plaintiff individually, and for the Class, incorporates by reference all preceding paragraphs as though fully set forth herein.

33. Plaintiff brings this case individually, and as a class action, pursuant to Fed. R. Civ. P. 23, on behalf of all persons who have incurred economic, monetary or statutory damages as a result of Defendant's sale and distribution of its Energy Blend.

34. Plaintiff seeks to represent the following Class:

- **All persons residing in the United States who purchased Star Snack's, Energy Blend.**

And the following sub-class:

- **All persons residing in the State of Alabama who purchased Star Snack's Energy Blend.**

Excluded from the Classes are the following:

i. Any and all federal, state, or local governments, including but not limited to their department, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions;

ii. Individuals, if any who timely opt out of this proceeding using the correct protocol for opting out;

iii. Current or former employees of Star Snacks;

16

iv.   Individuals, if any, who have previously settled or compromised claim(s) relating to Star Snack's Energy Blend; and

v.   Any currently sitting federal judge and/or person within the third degree of consanguinity to any federal judge.

35. Plaintiff seeks to recover damages on a Class-wide basis for herself and the Class under Alabama's breach-of-warranty law, Alabama's food and drug laws and breach of implied agreement, as well as all other states' similar laws as more fully described below.

36. Star Snacks violated the rights of each Member of the Class in the same fashion based upon Defendant's uniform actions in its marketing, producing, sales, design and distributing of its Energy Blend.

37. Plaintiff should be approved to maintain this action as a class action for the following reasons:

38. **Numerosity:**  Members of the Class are so numerous that individual joinder is impracticable.  The proposed Class contains thousands of Members.  The Class is therefore sufficiently numerous to make joinder impracticable, if not impossible.

39. **Common Questions of Fact and Law Exist:**  Common questions of fact and law exist as to all Members of the Class, including whether Defendant marketed, designed, produced and distributed the Product with its representations and implied and express warranties.

40. **Typicality:**  Plaintiff's claims are typical of the claims of the Class.  Star Snacks breach of its warranties and violations of implied agreements affected and harmed

Plaintiff and all Class Members alike.   Furthermore, Plaintiff and all Members of the Class sustained monetary and economic injuries arising out of Defendant's unlawful conduct.   Plaintiff is advancing the same claims and legal theories on behalf of herself and all absent Class Members.

41. **Adequacy:**   Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the Class – all seek redress for the same unlawful conduct.   Plaintiff retained Counsel who is competent and highly experienced in complex class action litigation, and she intends to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiff and her counsel.   Plaintiff's claims, like those of the Class, are antagonistic to Defendant.

42. **Predominance:**   Common questions of fact and law predominate over any questions affecting individual Class Members.

43. **Superiority:**   A class action is superior to other available means of fair and efficient adjudication.   The injury suffered by each individual Class Member is very small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct.   It would be impossible for all Members of the Class to effectively redress the wrongs done to them on an individual basis.   Therefore, a class action is the only reasonable means by which Plaintiff and the Class may pursue their claims.   Moreover, even if the Members of the Class could pursue such individual litigation, the court system could not.   Individualized litigation increases the delay and expense to all parties, and to the court system, by the complex legal and factual issues of this case.   By contrast, the class action device presents far

fewer management difficulties, and provides the benefits of single adjudication, economics of scale, and comprehensive supervision by a single court.

44. Plaintiff brings this action for herself and on behalf of a class of individuals in the United States who purchased Energy Blend and a subclass of individuals in the State of Alabama who have purchased Energy Blend.

## COUNT I

## BREACH OF CONTRACT

### (On Behalf of the Class and Subclass)

45. Plaintiff realleges and incorporates by reference all previous paragraphs of this Complaint as if fully set forth herein.

46. Plaintiff and the class members entered into implied and express agreements with Star Snacks.

47. The agreements provided that Plaintiff and the class members would pay Defendant for its Energy Blend.

48. The contracts further provided that Defendant would provide Plaintiff and the class members subject Energy Blend as required by law; i.e. a product composed of mostly almonds, pecans and walnuts.

49. Plaintiff and the class members paid Defendant for the Products that they purchased, and satisfied all other conditions of the agreements.

50. Defendant breached the implied and express agreements with Plaintiff and the class members by failing to comply with the material terms of providing the Energy Blend as required by law.

19

51. As a direct and proximate result of Defendant's breach, Plaintiff and the class members have been injured and have suffered actual damages in an amount to be established at trial.

## COUNT II

**BREACH OF WARRANTY**

**(On Behalf of the Class and the Alabama Subclass)**

52. Plaintiff realleges and incorporates by reference all paragraphs of this Complaint as if fully set forth herein.

53. Plaintiff and the class members formed contracts with Defendant at the time they purchased items from Defendant.   The terms of such contracts included implied and express promises and affirmations of fact by Defendant that said Energy Blend were being marketed in compliance with applicable law; i.e., that the product was mostly almonds, pecans and walnuts.

54. The implication of said marketing is that a requirement of law became part of the basis of the bargain, and is part of the contracts between Defendant on the one hand and Plaintiff and the class members on the other hand.

55. The implied and express affirmation of fact and law made by Defendant was made to induce Plaintiff and the class members to purchase goods from Defendant.

56. Defendant intended that Plaintiff and the class members would rely on said affirmations in making their purchases, and Plaintiff and the class members did so.

57. All conditions precedent to Defendants' liability under these warranties have been fulfilled by Plaintiff and the class members in terms of paying for the goods at

issue.   Defendant had actual and/or constructive notice of their own false marketing, and sales practices but to date have taken no action to remedy their breaches of implied and express warranty.

58. Defendant breached the terms of the warranty because the items purchased by Plaintiffs and the class members did not conform to the implied and express affirmations of fact by Defendant – that they were being sold according to representations and law.

59. As a direct and proximate result of Defendant's breach of warranty, Plaintiff and the class members have been injured and have suffered actual damages in an amount to be established at trial.

## COUNT III

### VIOLATIONS OF ALABAMA'S FOOD AND DRUG LAW

### (On Behalf of the Class and the Alabama Subclass)

60. Plaintiff realleges and incorporates by reference all paragraphs of this Complaint as if fully set forth herein.

61. Alabama's statute regarding proper labeling of food items within the State of Alabama is set out at § 20-1-1 through 20-1-154.

62. The applicable code sections regarding the violations by Defendant Star Snacks are as follows:

- § 20-1-20 defines <u>misbranded</u> of food as, "(s)uch term shall apply to all drugs or foods or articles which enter into the composition of food, the package or label of which shall bear or contain any statement, design or device regarding such article or the ingredients or substances contained therein which shall be false or misleading in any particular and to any food or drug product which is falsely branded as to the

state, territory or country in which it is manufactured or produced."

- § 20-1-22 defines <u>adulterated</u> in the case of food as, "If any substance has been mixed and packed with it so as to reduce or lower or injuriously affect its quality or strength; If any substance has been substituted wholly or in part for the article; If, in the course of its preparation or manufacture, an ingredient of inferior food value has been substituted in whole or in part for an ingredient of greater food value."

- § 20-1-25 further clarifies Alabama law respecting <u>misbranded</u> food products: "If, in package form, the package is not filled with the food it purports to contain within the limits of tolerance fixed by the State Board of Agriculture and Industries, irrespective of whether the quantity of the contents is plainly and conspicuously marked on the outside of the package in terms of weight, measure or numerical count; If the package containing it or its label shall bear any statement, design or device regarding the ingredients or the substances contained therein, which statement, design or device shall be false or misleading in any particular; If it is offered for sale under false representations."

- § 20-1-27 expresses Alabama's <u>prohibition</u> against misbranded or adulterated food products: "No person within this state shall manufacture for sale herein, have in his possession with intent to sell, offer or expose for sale, sell or deliver any article of food or drugs which is adulterated or misbranded within the meaning of this division."

63. Thus, without question, Star Snacks has sold and continues to sell, its Energy Blend in the State of Alabama in violation of Alabama's food laws.

64. Upon information and belief, Plaintiff asserts that Defendant has marketed and is marketing its Energy Blend in all other 49 states of the United States in violation of each states' similar Food and Drug Laws.

## COUNT IV

## INJUNCTIVE RELIEF UNDER THE ALABAMA DECLARATORY JUDGMENT ACT

65. Plaintiff repeats and incorporates by reference all paragraphs of this Complaint as if fully set forth herein.

66. Plaintiff and the classes need, and are entitled to, an order for injunctive and declaratory relief declaring that Defendant's advertising, marketing, and sales practice alleged herein violate federal regulations, and enjoining Defendant from continuing such practices with their Energy Blend.

67. Defendant is presently continuing each of these complained-of practices in their stores in Alabama, and upon information and belief in all its other stores in the United States.

68. Plaintiff and the classes have a significant interest in this matter in that each has been, and will again in the future, be subjected to the unlawful policies and practices alleged herein.

69. Indeed, Plaintiff is a frequent customer of stores which sell Star Snacks products. She consistently shops at said stores.  Further, Plaintiff routinely purchases merchandise from said stores, and is entitled to know whether the purported Energy Blend will legally display its contents.  It is anticipated that members of the classes continue their same shopping as well.  Until a change is required, Plaintiff and the classes will be regularly subjected to Defendant's unlawful conduct alleged herein and will be subject to such conduct in the future and otherwise.

70. Based on the foregoing, a justifiable controversy is presented in this case,

rendering declaratory judgment appropriate.

71. In addition, because the unlawful uniform policies of Defendant continue, and are on-going, Plaintiff and the classes also need, and are entitled to, an order for injunctive relief, enjoining Defendant from continuing these complained-of practices in their stores in Alabama and across the United States.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this case be certified and maintained as a class action and that judgment be entered in favor of Plaintiff and the classes against Defendant as follows:

A.    Enter an order certifying the proposed classes, designating Plaintiff as the representative for the class and subclass that she seeks to represent, and designating the undersigned as class counsel;

B.    Declare that Defendant is financially responsible for notifying all class members of Defendant's deceptive advertising, sales, and marketing practices alleged herein;

C.    Find that Defendant's conduct alleged herein be adjudged and decreed in violation of the law cited above;

D.    Grant injunctive and declaratory relief to end the challenged conduct;

E.    Grant economic and compensatory damages on behalf of Plaintiff and all members of the classes, to the maximum extent permitted by applicable law;

F.    Grant statutory, punitive, and/or exemplary damages as permitted by law;

G.    Award interest as permitted by law;

H.    Grant reasonable attorneys' fees pursuant to law and as otherwise permitted by statute, with reimbursement of all costs incurred in the prosecution of this action; and

I.    Grant such other relief as this Court deems just and proper.

Respectfully submitted,

BY:    /s/ Charles M. Thompson
Charles M. Thompson, Esq. THO019
ASB-6966-P77C
2539 John Hawkins Pkwy.
Suite 101-149
Hoover, AL 35244
(205) 995-0068
Fax (866) 610-1650
Email: cmtlaw@aol.com

**PLAINTIFFS DEMAND TRIAL BY STRUCK JURY**

/s/ Charles M. Thompson
Charles M. Thompson
Attorney for Plaintiff

**SERVE DEFENDANT via certified mail at this address:**

**Star Snacks Company, LLC**
105 Harbor Drive
Jersey City, NJ 07305